Syllabus.

#### Staunton.

## PHLEGAR'S EXECUTOR V. SMITH AND OTHERS.

September 22, 1921.

Absent, Sims, J.

1. LIMITATION OF ACTIONS—*Bond Secured by Trust Deed—Maturity of Bond—Debtor Assignee of Life Interest in Fund—Case at Bar.*—A fund in court which belonged to a life tenant and his remainderman was loaned to the assignee of the life tenant's interest by direction of the court for five years, the assignee giving a five-year bond secured by a deed of trust on real estate.

   *Held:* That the act of limitations began to run on both the bond and the deed of trust at the maturity of the bond. The bond became barred in ten years, and the deed of trust in twenty years, from that date. The running of the statute was neither prevented nor stayed by the fact that the maker of the bond was entitled to the interest on the fund.

2. REMAINDERS—*Life Tenant—Commutation of Value of Life Estate —Case at Bar.*—Neither in the instant case would the assignee of the life estate be entitled, if sued on the bond, to set off the present value of the life estate against his obligations under the bond to return the principal in five years. A party who has a life estate in a fund arising from the proceeds of the sale of land is not entitled to have the value of his estate commuted and paid to him in gross, unless the parties in interest agree to it.

3. LIMITATION OF ACTIONS—*Running of Statute—Existence of Set-off.* —The existence of a set-off does not prevent the statute from running on the principal demand.

4. CONVERSION AND RECONVERSION—*Fund in Court—Proceeds of Sale of Land—Subsequent Loan of Fund.*—A fund in court was the proceeds of the sale of land of which a wife died seized in fee. For the purpose of ascertaining the rights of the parties thereto the lower court properly held that the money must be treated as real estate, and decreed curtesy therein to the husband and the remainder to decedent's only daughter. This, however, was as far as the doctrine of conversion was applicable, and where the money was subsequently loaned under direction of court, it was loaned as money.

Appeal from a decree of the Circuit Court of Montgomery county. Decree for defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*M. H. Tompkins* and *Ellett & Phlegar,* for the appellant.

*Harless & Colhoun* and *Jordan, Roop & Sowder,* for the appellees.

BURKS, J., delivered the opinion of the court.

The facts of this case are undisputed and are very fairly set forth in the petition for appeal, as follows:

"The chancery suit of *Abell's Adm'r* v. *Wilson, et al.,* was brought in Montgomery court in November, 1879, to enforce a vendor's lien on 260 acres of land owned by the then deceased wife of John W. Wilson. · By decree, John W. Wilson was given, as curtesy, the interest to be derived throughout his lifetime on $480.58, which arose from the land sale after paying off the vendor's lien. A daughter, Lucy Wilson, was born in 1874, and was still an infant at the time the land of her deceased mother was sold under court order to satisfy the vendor's lien. This daughter was decreed, as heir of her mother, the surplus money, $480.58, after her father's death. This sum of $480.58, Archer A. Phlegar, receiver in the said suit, was ordered by decree at the May term, 1884, to lend for five years at a time on real estate security, the decree expressly permitting the loan to be made to W. H. Smith if he so desired.

"A written assignment by John W. Wilson to W. H. Smith of the former's life interest in the money, was already introduced into the suit and recognized by decree as valid. Thus W. H. Smith, as assignee, was entitled to the interest throughout John W. Wilson's lifetime on the $480.58.

"On July 12, 1884, Receiver Phlegar loaned the $480.58 to W. H. Smith, taking his five-year bond therefor with a trust deed lien on certain Montgomery county farm land owned by W. H. Smith. This land was entirely different from the land of Mrs. Wilson, which had been sold to satisfy a vendor's lien. On July 23, 1884, the trust deed was duly recorded in Montgomery county deed book "Y," page 175, and was filed in the suit as an exhibit with Receiver Phlegar's report to the November term, 1884, of the making of the loan to W. H. Smith, at which term and on which report of Receiver Phlegar's action, a decree of confirmation was entered.

"W. H. Smith died a good many years ago. There was no occasion or reason for Receiver Phlegar to collect interest from W. H. Smith on the bond for money loaned, because W. H. Smith himself was entitled to the interest as assignee from John W. Wilson as long as Wilson lived. So no interest seems to have ever been collected. The bond executed by W. H. Smith to Receiver Phlegar remains wholly unpaid and the trust deed securing same remains wholly unreleased.

"As shown by Receiver Phlegar's itemized report to the November term, 1884, and receipts filed therewith, the costs of the suit were all paid at the time the loan was made.

"By deed dated December 11, 1889, and duly recorded on April 21, 1891, W. H. Smith sold the trust deed land to L. H. Thurman. On December 29, 1903, the same land was sold to A. B. Smith at auction under decree of Pulaski Circuit Court in the judgment lien suit of *Miller's Ex'r* v. *Thurman's Adm'r, et al.* A. B. Smith still owns this land under a commissioner's deed made shortly after his purchase, and has been in possession continuously since his purchase.

"The proceedings in the suit of *Miller's Ex'r* v. *Thurman's Adm'r* in the Pulaski court were had with no refer-

ence at all to the fact that the suit of *Abell's Adm'r* v. *Wilson, et al.,* was pending in Montgomery Circuit Court, in which latter suit the land sold under decree of the Pulaski court was pledged under a trust deed as security for money that had been decreed to Lucy Wilson, an infant, to the principal of which money she was entitled after her father's death. No account of liens was taken in the Pulaski suit, and neither the trustee nor the beneficiary under the trust deed securing the money loaned by Receiver Phlegar to W. H. Smith, was made a party to the Pulaski suit.

"The suit of *Abell's Adm'r* v. *Wilson, et al.,* was pending on the docket of Montgomery Circuit Court continuously from ten years before Thurman bought from W. H. Smith the security land until after A. B. Smith bought this land at auction from the commissioner in the Pulaski suit on December 29, 1903.

"John W. Wilson died on May 16, 1918. About a month thereafter, his daughter, Lucy (whose married name was then Lucy Wilson Ward), filed her petition in the suit in Montgomery Circuit Court, styled *Abell's Adm'r* v. *Wilson, et al.,* in which petition she asked the court to order her sum of $480.58, with interest from her father's death, to be paid over to her now that her father was dead. To her petition (or an amendment thereof), B. M. Hagan, as executor of Receiver Arthur A. Phlegar, then also deceased, and A. B. Smith were made defendants.

"As the result of Lucy Wilson Ward's aforesaid petition and answers of the aforesaid defendants thereto, the question which arose between Receiver Phlegar's executor of the one part, and A. B. Smith of the other part, and which question is now presented to the Supreme Court of Appeals of Virginia, is this: Has the right to raise the money owing to Lucy Wilson Ward by enforcing the trust deed which W. H. Smith executed on July 12, 1884, to John R. Johnson, trustee, to secure Receiver Phlegar, become barred

by limitation, or is this land now liable in A. B. Smith's hands under the trust deed which W. H. Smith placed thereon to secure the fund he borrowed from Receiver Phlegar?"

It is claimed on behalf of the appellant that the right of action on the bond and deed of trust executed by Smith never accrued until the death of John W. Wilson, the life-tenant, because, as is claimed, "Receiver Phlegar could not have compelled repayment of the money by W. H. Smith so long as Wilson lived. If sued by the receiver when the bond apparently became due on July 12, 1889, W. H. Smith could have successfully set up the defense (and no doubt would have done so) that all costs of the suit were paid, that the receiver had no need of the money, that the ends of justice did not demand Smith to pay before Wilson's death, that he (Smith), as assignee from Wilson, was entitled to interest on the money so long as Wilson lived, and that since the money was amply secured by real estate, he, as maker of the bond, was not compellable to pay off the bond before Wilson's death." It is further claimed that Phlegar, receiver, held the fund in trust as well for the life-tenant as for the remainderman, and that if he had sued to recover on the bond or proceeded to enforce the deed of trust, Smith would have had the right to set-off his life estate in the fund. The further claim is made that the fund sought to be recovered is real estate, and that for some reason, not disclosed by the argument and not otherwise apparent, the statute of limitation is not applicable to the claim. None of these claims is sound.

[1-3] The fund was under the control of the court, and it was the duty of the court to see that it was preserved so that the life-tenant might enjoy the income from it and the remainderman might receive the principal on the termination of the life estate. The court was under no obligation to lend the money to the life-tenant at all, or if it did, for

any particular length of time. It recognized the fact that there might be a change in value of any security that might be offered, and while it directed the loan to be made to Smith if he desired it, it was particular to provide that the loan should be made for "not exceeding five years at a time." Smith well understood that the loan was to be made only for a period of five years, and that the return of the money could be demanded at the expiration of that time. He thereupon executed his bond to the receiver whereby he promised to pay to the receiver "five years after date, with interest from date," the sum of four hundred and eighty dollars and fifty-eight cents. When this time expired, the court had the right to demand payment and to change the investment for any reason it pleased, or without reason. Smith had given his solemn promise under seal to return the money at that time, and he could not evade it. This bond was secured by a deed of trust on real estate, and the court could at any time after its maturity have enforced it. But the act of limitations began to run on both the bond and the deed of trust at the maturity of the bond. The bond became barred in ten years, and the deed of trust in twenty years from that date. The running of the statute was neither prevented nor stayed by the fact that Smith was entitled to the interest on the fund during the lifetime of Wilson. Nor was he entitled, if sued, to set off the present value of an estate for the life of Wilson against his obligation to return the principal in five years. As said in *Amer. Nat'l Bank* v. *Taylor*, 112 Va. 1, 70 S. E. 534, Ann. Cas. 1912 D, 40: "As a general rule, a party who has a life estate in a fund arising from the proceeds of the sale of land is not entitled to have the value of his life estate commuted and paid to him in gross instead of annual interest on the fund, unless the parties in interest agree to it." But even if he could have claimed such set-off, that fact would not have prevented the statute from running. The existence

of a set-off does not prevent the statute from running on the principal demand.

[4] The fund in controversy was the proceeds of the sale of land of which the wife died seized in *fee*. For the purpose of ascertaining the rights of the parties thereto, the court properly held that the money must be treated as real estate, and decreed curtesy therein to the husband and the remainder to the only daughter. This is all that the doctrine of conversion has to do with the case. The money, as such, was thereafter loaned to Smith under the circumstances hereinbefore detailed.

The right to enforce the deed of trust has long since been barred by the statute of limitations. Hence, there was no error in the decree of the trial court so holding, and said decree is accordingly affirmed.

*Affirmed.*